# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Blojay Colnoe,<br><br>                    Plaintiff,<br><br>v.<br><br>Honeywell International, Inc.,<br><br>                    Defendant. | Case No. 19-cv-01638 (SRN/DTS)<br><br>**ORDER** |

Joshua R. Williams, Law Office of Joshua R. Williams, 2836 Lyndale Avenue South, Suite 160, Minneapolis, MN 55408; and Timothy M. Phillips, Law Office of Tim Phillips, 331 Second Avenue South, Suite 400, Minneapolis, MN 55401, for Plaintiff.

Brent D. Kettelkamp, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 225 South Sixth Street, Suite 1800, Minneapolis, MN 55402; and Leah S. Freed, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 2415 East Camelback Road, Suite 800, Phoenix, AZ 85016, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Summary Judgment [Doc. No. 28] filed by Defendant Honeywell International, Inc. ("Honeywell"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

**I.    BACKGROUND**

In November 2018, Plaintiff Blojay Colnoe applied for a Principal Supplier Recovery Specialist position at Honeywell. (Decl. of Brent D. Kettelkamp ("Kettelkamp Decl.") [Doc. No. 30], Ex. A ("Colnoe Dep."), at 81.) At the time, Colnoe held a full-time

1

position at UTC Aerospace Systems. (*Id.* at 47.) Honeywell's Supplier Recovery Specialists work at the facilities of Honeywell's suppliers, and are tasked with securing Honeywell's supply chain. (*See* Kettelkamp Decl., Ex. C ("Marchesani Dep."), at 26-28.) Consistent with the position's role, Honeywell's job description specifically notes that the position requires "80% + travel to work at the supplier's location."[1] (Kettelkamp Decl., Ex. F, at 2.) In order to ensure candidates understand and can comply with the travel requirement, Honeywell's hiring process incorporates multiple screening stages, including a candidate screening form. (Marchesani Dep. at 32-34.)

Around November 15, 2018, Colnoe met with a third-party recruiter to discuss the Supplier Recovery Specialist position at Honeywell. (Colnoe Dep. at 54-55.) On November 16, the recruiter presented Colnoe to Honeywell as a candidate for the position. (*See* Kettelkamp Decl., Ex. H.) In her correspondence to Honeywell, the recruiter represented that Colnoe was "located in Minneapolis," and "would like to work at the Minneapolis location, is open to travel." (*Id.*) The recruiter attached Honeywell's candidate screening form, which she had completed on Colnoe's behalf. (*Id.*; Colnoe Dep. at 72.) Colnoe testified that the recruiter did not discuss the form's questions with him in detail. (Colnoe Dep. at 72.) The form's first question was: "How do you feel about traveling overnight? You may need to stay in the location of the supplier anywhere from 1 to 5 nights." (Kettelkamp Decl., Ex. H.) The recruiter answered: "He's comfortable with doing

---

[1] It is undisputed that Colnoe was given the written job description during the hiring process. (*See* Colnoe Dep. at 93-94.)

that, he currently does just about the same travel in his role." (*Id.*) In addition, the form asked whether Colnoe would be willing to relocate to locations in Arizona, California, Minnesota, New Jersey, and Indiana. (*Id.*) The recruiter marked that Colnoe would be willing to relocate to Minneapolis, Minnesota, and wrote that he "would like to work this location. He's open to any amount of travel."[2] (*Id.*)

Colnoe then submitted an application for the position, and Honeywell requested that he fill out a second screening form. (*See* Kettelkamp Decl., Exs. I-J.) On that form, which Colnoe completed himself, Colnoe answered the same question regarding staying at a supplier's location anywhere from 1 to 5 nights: "I am very comfortable with traveling at night. Moreover, I am comfortable of [sic] staying 1 to 5 nights at one location." (*Id.*, Ex. J.) In response to the same question regarding relocation, Colnoe wrote that he was willing to relocate to the listed locations, and "will need a month to do so." (*Id.*) Honeywell's hiring personnel testified unequivocally that had Colnoe represented that he was unable to comply with the "80% + travel to work at the supplier's location" requirement, his application would not have proceeded past the screening process. (*See id.*, Ex. E ("Desai Dep."), at 40-41; Marchesani Dep. at 34.)

Colnoe proceeded through three interviews with Honeywell personnel. First, Colnoe spoke by telephone with Meg Desai and Doug Scites on January 8, 2019. (Colnoe

---

[2] Colnoe testified that the recruiter's statements were inaccurate, and that he had told her that he was comfortable traveling occasionally—including for a week at a time—but that he was not willing to travel out of state "consistent[ly] every week." (Colnoe Dep. at 73-75.)

Dep. at 94.) Colnoe testified that he clearly expressed his desire to work at Honeywell's Minneapolis office and to be assigned to suppliers located in Minnesota—that way, he could travel to the supplier's location and return home in the evening, an arrangement Colnoe believed would accommodate his need to be with his family and pursue further schooling. (*Id.* at 96-110.) At his deposition, Colnoe did not relay the particular language Scites used in response to Colnoe's concerns regarding an out-of-state assignment; instead, Colnoe testified that he made his concerns clear, and Scites said, in essence, "okay, that is fine." (*Id.* at 108.) Neither party has offered testimony from Scites. Desai, who participated in Colnoe's interview, could not recall specific details of the interview, but testified that she could not recall any promises to Colnoe that he would be assigned to a supplier in Minnesota. (Desai Dep. at 36.)

Colnoe's second interview occurred on January 14, 2019, with Heather Marchesani. Marchesani testified that she made clear the requirement "to be onsite full-time at a supplier, wherever that supplier location was"—including out of state. (Marchesani Dep. at 14-15.) Colnoe does not assert that Marchesani made any promises that he would be assigned to an in-state supplier. (Colnoe Dep. at 137-38.) Finally, Colnoe interviewed with Eric Kayser on January 18, 2019. Colnoe testified that he did not discuss the position's travel requirements with Kayser. (*Id.* at 140-41.) Kayser testified that had Colnoe mentioned an inability to comply with the position's travel requirements, Kayser would have relayed that issue to Scites. (Kettelkamp Decl., Ex. D, at 19.)

Colnoe's application was successful, and Honeywell sent a written offer letter to him. (*Id.*, Ex. M.) The letter stated that his position would be based at Honeywell's

4

Minneapolis office, but made no representation regarding where Colnoe's assigned suppliers would be located. (*Id.*) Colnoe signed the offer letter and resigned his employment with UTC Aerospace Systems. (*Id.*; Decl. of Blojay Colnoe [Doc. No. 35], at ¶ 3.) When he began work at Honeywell, he was assigned to a supplier in Cedar Rapids, Iowa. (Colnoe Dep. at 112-13.) Colnoe contacted Scites and Marchesani and told them that due to his family and schooling, he could not work full-time in Iowa. (*Id.* at 148.) Ultimately, Honeywell determined that it did not have any other suppliers that suited Colnoe's travel restrictions, and it terminated his employment. (*Id.* at 162-63.)

Colnoe filed suit in Hennepin County District Court, seeking relief under the doctrine of promissory estoppel. (*See* Compl. [Doc. No. 1-1].) Honeywell timely removed to this Court, and now moves for summary judgment.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### B. Analysis

In this action, Colnoe seeks to enforce Scites' alleged promise that Colnoe would be assigned to work at a Minnesota supplier through the doctrine of promissory estoppel. Under Minnesota law, promissory estoppel applies where the plaintiff demonstrates (1) a clear and definite promise; (2) that the promisor intended to induce the plaintiff's reliance on that promise, and the plaintiff relied on the promise; and (3) that the promise must be enforced to prevent injustice. *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn. 1992) (citing Restatement (Second) of Contracts § 90(1) (1981)).

In their memoranda and at oral argument, the parties disputed at length whether Minnesota law imposes categorical limitations on the promissory estoppel doctrine in the at-will employment context. (*See, e.g.*, Mem. in Supp. of Mot. for Summ. J. [Doc. No. 29],

at 28 (arguing that Minnesota courts recognize only two types of promissory estoppel claims in the at-will employment context).) The parties' discussion of that issue, and the cases cited, generally speak to whether an employee may invoke the promissory estoppel doctrine to impose a for-cause limitation on a contract for at-will employment. But that is not the issue presented here. Colnoe does not invoke the promissory estoppel doctrine to enforce a for-cause limitation on his at-will employment relationship; rather, he seeks to enforce an alleged promise regarding a different term of employment—namely, the location where he would work.

The Court need not consider whether Minnesota law imposes categorical limitations on the promissory estoppel doctrine's application to terms of employment other than for-cause limitations, because the Court concludes that Colnoe has not raised a genuine factual dispute regarding whether Scites made a clear and definite promise. Under Minnesota law, a clear and definite promise is one that "the promisor should reasonably expect to induce action or forbearance on the part of the promisee." *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (citation omitted). "The element is satisfied by an unambiguous statement indicating 'a clear and definite commitment.'" *Heffron v. Burlington N. & Santa Fe Ry. Co.*, No. A11-2039, 2012 WL 3262968, at *2 (Minn. Ct. App. Aug. 6, 2012) (quoting *Faimon v. Winona State Univ.*, 540 N.W.2d 879, 882 (Minn. Ct. App. 1995)). Where the facts are not disputed, whether the record establishes a clear and definite promise is a question of law. *Martens*, 616 N.W.2d at 746 (citation omitted).

In support of his claim, Colnoe relies exclusively on his own testimony that Scites promised he would be assigned to work on-site at a Minnesota supplier. Colnoe's account

of his interview with Scites does not, however, suggest that Scites made a clear and definite promise under Minnesota law. At his deposition, Colnoe explained, at length, that he made clear his desire to be assigned to a Minnesota supplier so that he might spend more time with his family and pursue further schooling, and that he left the interview believing that Honeywell would accommodate his request. (*See* Colnoe Dep. at 96-110.) But when pressed regarding what *Scites* said during the interview, Colnoe testified only that he made his wishes clear, and Scites said "okay, that is fine." (*Id.* at 108.) The Court finds that, even considering Colnoe's account in isolation, Colnoe's testimony does not establish a "clear and definite commitment" to assign Colnoe to a Minnesota supplier. *Faimon*, 540 N.W.2d at 882.

A consideration of the entire record reinforces the Court's conclusion. Colnoe's account of the Scites interview is the only evidence in this record supporting Colnoe's claim that Scites promised him a Minnesota assignment. Neither party presented testimony from Scites. Although Colnoe faults Honeywell for failing to offer testimony from Scites rebutting Colnoe's characterization of their conversation,[3] it is Colnoe, as plaintiff, who bears the burdens of production and persuasion on this issue. Standing against Colnoe's testimony is evidence that Honeywell employees, in interviews after Colnoe spoke with Scites and in written communications, understood and communicated to Colnoe that he could be assigned to work at an out-of-state supplier's facility.[4] In light of that evidence,

---

[3] *See* Mem. in Opp. to Mot. for Summ. J. [Doc. No. 34], at 1.

[4] *See* Kettelkamp Decl., Ex. F (job description noting that the position required "80% + travel to work at the supplier's location"); *id.*, Ex. M (offer letter stating that

8

the Court finds that Colnoe's self-serving testimony—standing alone—is insufficient to create a genuine factual dispute on this issue. *See Durand v. Bank of Am.*, No. 15-CV-00126 (SRN/SER), 2017 WL 2345677, at *4 (D. Minn. May 30, 2017), *aff'd*, 769 F. App'x 395 (8th Cir. 2019) ("Self-serving affidavits alone cannot defeat a properly supported motion for summary judgment. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). Rather, a plaintiff 'must substantiate [self-serving] allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.' *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)." (alteration in original)). Importantly, Colnoe's signed offer letter does not reflect any commitment to assign him to a Minnesota-based supplier. (Kettelkamp Decl., Ex. M.) And there is no evidence that Scites acknowledged his alleged promise once Colnoe objected to working at a supplier located in Iowa.

It is clear from this record that, unfortunately, a misunderstanding existed regarding the Supplier Recovery Specialist position's requirements.[5] But the record does not reflect

---

Colnoe would work out of Honeywell's Minneapolis office, but not indicating where his assigned suppliers would be located); Marchesani Dep. at 14-15 (testifying that Marchesani discussed with Colnoe the requirement "to be onsite full-time at a supplier, wherever that supplier location was"—including out of state).

[5] For example, Colnoe testified that he was willing to spend "one to five nights [at a supplier's location] . . . if the need came up for me to travel to a supplier. If I needed to travel to a supplier to do some stuff there . . . . Sometimes you travel to somewhere outside of your location maybe one or two days or maybe three days or four days to work on an emergency situation." (Colnoe Dep. at 117-18.) But Honeywell designed its Supplier Recovery Specialist role around the philosophy that a Honeywell employee must be physically present at suppliers' facilities in order to secure Honeywell's supply chain. (*See* Marchesani Dep. at 26-28.) Accordingly, the job description reflects a requirement of "80% + travel to work at the supplier's location"—not travel to a supplier's location on an as-needed or emergency basis. (Kettelkamp Decl., Ex. F, at 2.)

a clear and definite commitment to assign Colnoe to work at a Minnesota supplier's facilities. Accordingly, the Court grants Honeywell's Motion for Summary Judgment.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 28] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 24, 2021                                            s/Susan Richard Nelson
                                                                                                  SUSAN RICHARD NELSON
                                                                                                  United States District Judge